**UNITED STATES of America**

v.

**Charles LUISI, Jr., Defendant.**

**No. S1 97 CR. 868(BDP).**

United States District Court,
S.D. New York.

July 21, 1998.

Mary Jo White, U.S. Attorney, Andrew S. Dember, Asst. U.S. Atty., United States Attorney's Office, New York City, for U.S.

Raymond J. Aab, New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### INTRODUCTION

On May 19, 1998, Charles Luisi, Jr. was convicted after a jury trial of one count each of wire fraud and mail fraud in connection with an alleged scheme to defraud the Kemper Insurance Company, AT & T Capital Leasing Services, and East Coast Office Equipment. *See* 18 U.S.C. § 1341, 1343. Luisi now moves for a judgment of acquittal or for a new trial under Fed.R.Civ.P. 29 and 33, respectively. Luisi contends that the Court improperly removed a juror during the course of the trial, that the proof of the wire fraud charge was legally insufficient, and that items seized from Luisi's home by the government and offered as exhibits were inadequately authenticated and should not have been received as evidence.

### BACKGROUND

In October 1994, Mr. Luisi, at the time a member of the New York City Police Department, reported to his homeowner's insurance carrier, Kemper Insurance Company, that his home had been burglarized and vandalized and that numerous items of personal property had been taken. Among the items allegedly stolen were distinctive hunting clothing, glassware and china, and a diamond engagement ring owned by Luisi's wife. Among the items vandalized was a Minolta CF-80 color copier which Luisi had leased only two or three weeks earlier through AT & T Capital Leasing Services and East Coast Office Equipment.

Luisi intended to use the color copier in connection with a new business, reproducing color photographs of young children. Luisi had entered a lease agreement for the copier earlier in October and took delivery of the copier eight days prior to the alleged robbery. In addition to an approximately $2000 deposit, the lease agreement obligated Luisi to monthly payments of $1000 for thirty six months. Prior to the purported burglary, Luisi abandoned the proposed business venture and decided that he no longer needed the copier. He contacted AT & T Capital Leasing Services to cancel the lease but was told that he was not permitted to do so. A few days later, the copier was purportedly vandalized beyond repair by intruders to Luisi's home.

At trial, the government endeavored to prove that Luisi 1) committed mail fraud by fraudulently submitting a claim to the Kemper Insurance Company for, among other things, the theft of items that, in fact, had not been stolen, and 2) committed mail fraud by falsely claiming that the Minolta copier had been vandalized during a burglary, which resulted in the termination of his three year lease agreement.

The government offered substantial evidence in support of both charges. For example, the government offered evidence that the ring which Luisi contends was stolen was worn by his wife, also a member of the New York City Police Department, *after* the purported burglary. The government seized the ring, introduced it into evidence, and offered testimony by the jeweler who sold the engagement ring as well as the ring's appraiser, among others, that supported the government's contention that the ring worn by Luisi's wife after the alleged burglary was, in fact, the ring that Luisi had reported to Kemper as stolen. The government also introduced into evidence numerous items seized from Luisi's home in 1997, which the government contended Luisi had reported as stolen in 1994.

## DISCUSSION

■ Luisi contends that the Court erred in excusing a juror during the trial. The juror had been overheard discussing the case with another juror during the presentation of the government's case, stating, among other things, that the trial was very boring. The Court had specifically directed the jurors not to discuss the case prior to deliberations. After questioning the juror, the Court concluded that he had failed to candidly respond to the Court's inquiries concerning the nature of his conversation with a fellow juror. The Court then replaced the juror with an alternate juror and resumed the trial.

■ During the course of a trial prior to the beginning of deliberations, the trial court may remove a juror at its discretion if the court determines that the juror's ability to perform his or her duties is impaired. *United States v. Gambino*, 951 F.2d 498, 502–503 (2d Cir.1991) (citations omitted); Fed.R.Cr.P. 24(c). Luisi has offered no evidence or identified no facts that could support a finding that the removal of the juror constituted an abuse of discretion. Luisi does not suggest that the juror's removal resulted from bias, nor that he was prejudiced in any fashion.

■ Luisi next contends that the evidence of wire fraud was legally insufficient to support his conviction because the government did not offer any direct evidence that Luisi was responsible for the destruction of the copier. A defendant faces an especially heavy burden in challenging a jury verdict for insufficiency of evidence. *United States v. Chang An–Lo*, 851 F.2d 547, 553 (2d Cir. 1988). In considering whether the evidence offered at trial is legally sufficient to support a jury verdict, the Court should overturn the jury's verdict of guilty only "if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir.1972) (quotations and citations omitted). If the evidence, construed most favorably to the prosecution, is sufficient to convince a rational jury of the defendant's guilt, then the conviction must stand. *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir.1994). 18 U.S.C. § 1343, states that:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice shall be [guilty of a crime].

■ The government's evidence was more than sufficient to sustain the jury's finding of guilt on the wire fraud count. The government presented evidence that Luisi falsely reported that the copier had been vandalized during an attempted burglary in order to evade the three year lease commitment. The government proved that Luisi had attempted, unsuccessfully, to terminate the lease shortly before the purported burglary. Luisi's desire to terminate the lease was demonstrated by, among other things, evidence that he had stopped payment on a deposit check that he had submitted to AT & T Capital Leasing, and then, after the purported burglary, reissued a backdated deposit check in order to conceal his previous attempt to free himself from the lease. There is no dispute that interstate wire communications were utilized as result of Luisi's claim that the copier was vandalized beyond repair and his attempt to then cancel the lease agreement.

The defendant contends that the government's case was based largely on circumstantial evidence. Of course, in arriving at its conclusion that Luisi committed wire fraud, the jury was free to consider circumstantial evidence, including evidence that Luisi submitted fraudulent claims to Kemper arising from the same purported burglary. *See United States v. Libera*, 989 F.2d 596, 601 (2d Cir.1993) (jury verdict may be based on inferences drawn from circumstantial evidence). In this case, there was clearly sufficient evidence, circumstantial and otherwise, to support the jury's verdict of guilty on the wire fraud count.

■ Finally, Luisi contends that items of evidence seized from his home and claimed by the government to be items that Luisi

reported as stolen were inadequately authenticated. Under Fed.R.Evid.R. 901(a), in order for government exhibits to be admissible, there need only be a "rational basis for concluding that an exhibit is what it is claimed to be." *United States v. Hon,* 904 F.2d 803, 809 (2d Cir .1990) (citations omitted). This standard is easily met with respect to the government's evidence. The government offered more than sufficient evidence to support a finding that the ring offered into evidence, for example, was, in fact, the ring that Luisi had reported as stolen. The government introduced testimony from both the jeweler who sold the ring and the appraiser who appraised the ring, both in 1991. The ring introduced at trial had identifiable markings, including an inventory control number that established that the ring had been purchased in 1991. Further, the appraiser testified that the appraisal that Luisi submitted to Kemper in support of his insurance claim was the same appraisal that the appraiser had prepared in 1991 for the ring introduced into evidence. This evidence was clearly adequate to support a rational finding that the ring received at trial was the same ring that Luisi claimed to have been stolen.

Similarly, the other property seized from Luisi's home and offered into evidence matched the description of items that Luisi had reported to Kemper as stolen. In addition, the government introduced evidence casting doubt on Luisi's claim that he had purchased similar items after the burglary.

## CONCLUSION

For the reasons stated, the defendant's motion is denied in its entirety. The Clerk of the Court is directed to enter an order denying defendant's motion for a judgment of acquittal or for a new trial and affirming the defendant's judgment of conviction.

**SO ORDERED.**